**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

---

DAVID YURMAN ENTERPRISES LLC
and DAVID YURMAN IP LLC,

*Plaintiffs*,

v.

THE TJX COMPANIES, INC. and DOES 1-10,

*Defendants*.

Civil Action No.: _____

**JURY TRIAL DEMANDED**

---

## COMPLAINT

Plaintiffs David Yurman Enterprises LLC and David Yurman IP LLC (together, "Yurman"), for their complaint against Defendant The TJX Companies, Inc. ("TJX") and Does 1-10 (collectively, with TJX, "Defendants"), allege as follows:

## NATURE OF THE ACTION

1.      More than four decades ago, David Yurman, a sculptor, and his wife Sybil, a painter, fused together their artistic talents to establish the David Yurman jewelry brand — a brand founded on a shared passion for art and the notion that beautifully designed objects should be worn. Today, David Yurman has evolved into a world-renowned luxury jewelry design house known for its sculptural designs featuring an iconic cable motif.

2.      As a result of decades of commercial success, Yurman jewelry designs have become instantly recognizable. Yurman's designs have graced the covers of fashion magazines and have been worn by scores of public figures and celebrities, including Taylor Swift, Dua Lipa, Brad Pitt, Sydney Sweeney, Sabrina Carpenter, Dwayne Johnson, First Lady Michelle Obama, Barbra Streisand, Mary J. Blige, Scarlett Johansson, and Michael B. Jordan, among

many others. As a result, Yurman jewelry designs have acquired widespread consumer appeal and are among the most coveted designer jewelry pieces.

3.    Like many successful brands, David Yurman has had to confront the proliferation of "dupes" — copies of brand name goods that are meant to look just like the authentic designer version but without the designer price tag. Companies that manufacture or sell dupes are able to do so at this lower price in part because they use inferior materials and free ride on the innovation and reputation of the designer brands they are copying.

4.    Defendant TJX operates off-price retailers, including T.J. Maxx and Marshalls, through which TJX claims to deliver brand name and designer fashions at steep discounts. Defendant TJX actively promotes that messaging, including by posting highly visible signage in its stores that read "same hot labels seen at the mall. but never at our prices." At times, that signage is placed immediately behind the stores' jewelry counters:





5.    It appears that one way in which Defendant TJX is able to sell designer fashions at discounted prices is by selling look-alike versions of designer products. This case arises out of the sale of blatant copies of Yurman's designer jewelry creations at T.J. Maxx and Marshalls retail stores (the "TJX Stores"), as shown at Exhibit A (collectively, the "Infringing Products"). The Infringing Products copy nearly every element of Yurman's genuine pieces such that they are virtually indistinguishable from Yurman's valuable, artistic creations, all of which are protected by copyright.

6.    Indeed, as shown by way of the examples at Exhibit B, consumers who have purchased Defendants' copies have taken to social media to broadcast that they found "David Yurman" pieces and "David Yurman" dupes at TJX Stores.

7.    Yurman's works are the result of technical and creative skills honed over decades by artists committed to their craft. The growing trend of dupes — where an artist's hard work is slavishly copied by unscrupulous third-parties — undermines the entire nature of creative design and expression. This trend rewards predator companies such as TJX that knowingly

imitate rather than innovate. Yurman strongly opposes this practice because it undermines the value of artists, allowing others to freely profit from and exploit an artist's unique creative designs.

8.    Upon information and belief, Defendants have an established practice of manufacturing and selling dupes of brand name products. As such, TJX Stores have become well known among consumers for selling look-alike versions of high-end products ranging from fashion accessories, footwear and handbags, to fragrances, home goods and jewelry. According to one article, "T.J. Maxx has emerged as a prime destination" for dupes.[1]

9.    In this case, Defendants appear to have set out to copy nearly every element of numerous of Yurman's original jewelry designs. On their face, the differences between Defendants' Infringing Products and David Yurman's designs are so inconspicuous that many on social media have commented that they believe TJX is selling *actual* David Yurman products, though, upon information and belief, the TJX copies are made with far inferior materials. *See* Exhibit B. This is to the detriment of Yurman and creative designers everywhere.

10.    For the creatively challenged or ethically unconcerned, copying jewelry designs comes with a unique risk — jewelry is eligible for copyright protection under the Copyright Act. Indeed, Yurman is the owner of an extensive copyright portfolio that protects a wide range of its jewelry designs. In this case, TJX is selling deliberate imitations of numerous of Yurman's copyright-protected jewelry designs. Accordingly, Defendants have engaged in willful copyright infringement in violation of the Copyright Act, 17 U.S.C. § 101, *et seq*.

---

[1] *See* Made Trends, *TJ Maxx: The Dupe Destination* (July 23, 2024), available at https://madetrends.com/tj-maxx-the-dupe-destination/. *See also* Jessica Kaplan, *T.J. Maxx's Stunning New Mirror Looks So Similar to a Popular Pottery Barn Style Nearly 3x the Price*, Parade (July 30, 2025), available at https://parade.com/shopping/pottery-barn-loveshackfancy-full-length-mirror-lookalike; Leanne Hall, *TJ Maxx shoppers race to buy a 'great' Baccarat dupe for just $19.99 – and original sells for $300*, The U.S. Sun (July 22, 2025), available at https://www.the-sun.com/money/14784084/tj-maxx-baccarat-dupe-19/.

11.    To put a stop to Defendant TJX's infringing conduct, Yurman seeks injunctive relief, monetary relief in an amount sufficient to compensate it for its losses, an accounting and award of Defendants' profits flowing from Defendants' infringing activities, prejudgment interest, costs and attorneys' fees, and all other relief the Court deems just and proper.

## JURISDICTION AND VENUE

12.    This Court has jurisdiction over the subject matter of this action pursuant to Section 501 of the Copyright Act, 17 U.S.C. § 501, and Sections 1331 and 1338(a) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a).

13.    This Court has personal jurisdiction over Defendants under Sections 301 and/or 302 of the New York Civil Practice Laws and Rules because Defendants conduct, transact, and solicit business in this District, including by operating retail stores in this District through which Defendants promote, offer for sale, and have sold the Infringing Products. Accordingly, the events giving rise to this Complaint occurred in the State of New York and/or had effects in this State, and Yurman is being harmed in this jurisdiction.

14.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and/or 1400(a) because, upon information and belief, a substantial part of the events giving rise to the claims alleged in this Complaint occurred in this District, and/or Defendants or their agents may be found in this district.

## THE PARTIES

15.    Plaintiff David Yurman Enterprises LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 24 Vestry Street, New York, New York, 10013. David Yurman Enterprises LLC is engaged in the design, manufacture, distribution, and sale of fine jewelry.

16.     Plaintiff David Yurman IP LLC is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 24 Vestry Street, New York, New York, 10013. David Yurman IP LLC owns, maintains, and enforces intellectual property rights in Yurman designs, including the copyrighted designs at issue in this action.

17.     David Yurman Enterprises LLC and David Yurman IP LLC have been assigned all rights, title and interest in and to the registered copyrights at issue in this action, including all causes of action for infringement thereof.

18.     Upon information and belief, Defendant The TJX Companies, Inc. is a Delaware corporation with its principal place of business at 770 Cochituate Road, Framingham, Massachusetts 01701. TJX does business in this District, including by advertising and promoting, offering for sale, selling, and distributing the products identified at Exhibit A in this District through retail stores located in this District.

19.     Yurman is informed and believes and based thereon alleges that the fictitiously named defendants sued herein as Does 1 through 10, inclusive, and each of them, are in some manner responsible or legally liable for the actions, events, transactions, and circumstances alleged herein. Yurman is informed and believes and based thereon alleges that one or more of the Doe defendants conspired with and/or aided and/or abetted TJX by, by a way of example and not limitation, manufacturing, designing or producing the products at issue herein. The true names and capacities of such fictitiously named defendants, whether individual, corporate, associate or otherwise, are presently unknown to Yurman, and Yurman will seek leave of court to amend this Complaint to assert the true names and capacities of such fictitiously named defendants when the same have been ascertained.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

I.    **Yurman's Business and Intellectual Property Rights**

    A.    **The David Yurman Brand**

20.    Yurman is a world-famous designer of fine jewelry, luxury watches and accessories. Since 1980, Yurman has pioneered a unique expression of luxury jewelry designed for daily wear. Over the last four decades, the DAVID YURMAN brand has become well known for its superior craftsmanship, excellent quality, and a distinctive design aesthetic that fuses art and sculpture with fashion and jewelry.

21.    Yurman jewelry designs bear distinctive and original elements and features that have become synonymous with the DAVID YURMAN brand in the eyes of the public, consumers, and the jewelry industry. Most notably, Yurman is celebrated for its now iconic cable design. Yurman's cable motif is a signature of the DAVID YURMAN brand, features prominently throughout Yurman's jewelry collection, and has contributed immeasurably to the global recognition of Yurman's designs in the jewelry industry.

22.    Yurman jewelry designs are marketed and sold in Yurman's own boutique stores, through Yurman's website, at authorized specialty retail stores, and in high-end department stores.

23.    Yurman jewelry designs are widely advertised across digital, print, and social media. Yurman designs have been featured in magazines and newspapers, including, for example, *Vogue, Vanity Fair*, *Town and Country*, *InStyle*, *The New York Times*, and *The Los Angeles Times*. Yurman designs are displayed on billboards across the country, in print media advertisements, in social media advertisements (including influencer and third-party posts), and are featured in other digital and email marketing.

24.     Moreover, Yurman designs are routinely featured in the media. Yurman designs have been displayed on the covers of *Vogue* and *Vanity Fair*, have been worn by public figures, celebrities, and fashion icons including Kate Moss, Jennifer Aniston, Naomi Campbell and Gisele Bundchen, and numerous publications have written articles profiling Yurman and its iconic jewelry. For example, in 2021 *Town & Country* described Yurman's "signature Cable design" as "instantly recognizable;"[2] a September 2025 *Vogue* article ranked "David Yurman Cables" among "the most sought-after luxury jewelry of all time;"[3] a 2017 profile in the *New York Times* quoted *Vogue*'s fashion director, who stated that "[Yurman's] cable bracelet didn't really look like anything else . . . [i]t was very unique, and that has been one of the reasons [Yurman has] been successful for so long — this unwavering point of view;"[4] and a December 2022 article in *Elle* noted "[y]ou see a cable-twist bangle, and you instantly know who made it: David Yurman."[5]

25.     In light of the extensive press coverage of Yurman's jewelry, and the fact that Yurman's designs have been worn by celebrities and public figures and advertised and sold extensively throughout the country, Yurman's designs have acquired tremendous consumer recognition and commercial success.

### B.    Yurman's Copyrighted Designs

26.     The U.S. Copyright Office considers jewelry designs works of artistic craftsmanship. *See* § 908.1, Compendium of U.S. Copyright Office Practices (3d. Ed. 2021).

---

[2] Jill N. Newman, *8 Things You Didn't Know About David Yurman's Iconic Cable Bracelet Design*, TOWN & COUNTRY (Oct. 8, 2021), available at https://www.townandcountrymag.com/style/jewelry-and-watches/a37887414/david-yurman-cable-bracelet-history/.
[3] Samantha Solomon, *A Running List of the Most Sought-After Luxury Jewelry of all Time*, VOGUE (Sept. 29, 2025), available at https://www.vogue.com/article/luxury-jewelry.
[4] Rachel Felder, *David Yurman Jewelry: 'This is an Art Project*,' THE NEW YORK TIMES (Dec. 1, 2017), available at https://www.nytimes.com/2017/12/01/fashion/jewelry-david-yurman.html.
[5] Justine Carreon and Dale Arden Chong, *36 Fine Jewelry Brands Worth Investing In*, ELLE (Dec. 21, 2022), available at https://www.yahoo.com/lifestyle/7-brands-changing-way-shop-210800499.html.

27.    To protect its original jewelry designs, Yurman has sought and obtained

numerous U.S. copyright registrations, including:

(a)    U.S. Copyright Registration No. VA 971-060, issued September 3, 1999, for

Yurman's "Renaissance" Bracelet Design No. B4157, shown below;



(b)    U.S. Copyright Registration No. VA 1-876-304, issued January 22, 2013 for

Yurman's "Petite X" jewelry collection, including Yurman's "Petite X" Bracelet Design No.

B11552D, shown below;



(c)    U.S. Copyright Registration No. VAu 405-161, issued January 23, 1998,

for Yurman's 1993 Collection, and supplemented by U.S. Copyright Registration No. VAu 757-

597 on May 3, 2012, for a collection of original jewelry designs including:

i.    Yurman's "Renaissance" Bracelet Design No. B4907;



ii.    Yurman's "Buckle Classic Cable" Bracelet Design No. B4460;



iii.     Yurman's "Buckle Classic Cable" Bracelet Design No. B4026;



iv.    Yurman's "Cable X" Earring Design No. E4918;



v.    Yurman's "Two-Tone Cable" Earring Design No. E4847;



vi.    Yurman's "Cable X" Bracelet Design No. B4913; and



vii.    Yurman's "Cable X" Bracelet Design No. B4954.



The foregoing copyrighted jewelry designs are hereinafter referred to collectively as the "Copyrighted Designs." True and correct copies of the U.S. copyright registrations for the Copyrighted Designs are attached hereto as Exhibit C.

28.    Yurman owns all right, title and interest in and to the Copyrighted Designs, which constitute original and copyrightable subject matter under the Copyright Act.

## II.    Defendants' Infringing Conduct

29.    Long after Yurman created the Copyrighted Designs, acquired copyright registrations protecting the Copyrighted Designs, and sold and advertised the Copyrighted Designs widely throughout the United States, Defendants manufactured, caused to be manufactured, displayed, advertised, distributed, offered for sale and/or sold the Infringing Products, which are blatant copies of Yurman's Copyrighted Designs.

30.    Upon information and belief, Defendant TJX operates brick-and-mortar retail stores through which it offers for sale a wide range of products at discounted prices, including apparel, accessories, jewelry, housewares, and beauty products.

31.     Upon information and belief, Defendant TJX advertises that it offers "brand name" and "designer" fashions "at prices less than full-price retailers' (including department, specialty, and major online retailers) regular prices, on comparable merchandise, every day."[6]

32.     Upon information and belief, Defendant TJX represents to consumers that it seeks out "brand name and designer fashions," and, further, that Defendant TJX is able to sell such "brand name and designer fashions" to consumers at a discounted price by purchasing oversupply from designers.

33.     Upon information and belief, one of the reasons consumers shop at the TJX Stores is for the purpose of purchasing designer and brand name fashion, accessories, and jewelry products at discounted prices.

34.     In this case, on information and belief, Defendants have manufactured, caused to be manufactured, and/or purchased from suppliers jewelry products that are slavish imitations of the Copyrighted Designs.

35.     Upon information and belief, Defendants have offered for sale the products shown below, which are blatant copies of Yurman's Copyrighted Designs:

---

[6] "How We Do It," T.J. Maxx, available at https://tjmaxx.tjx.com/store/jump/topic/how-we-do-it/2400087.

| Defendants' Infringing Products | Yurman's Copyrighted Designs |
|---|---|
|  | **Reg. No. VAu 405-161**<br><br>**Reg. No. VA 971-060** |
|  | **Reg. No. VAu 405-161** |

| Defendants' Infringing Products | Yurman's Copyrighted Designs |
|---|---|
|  | **Reg. No. VAu 405-161** |
|  | **Reg. No. VAu 405-161** |
|  | **Reg. No. VAu 405-161** |



| Defendants' Infringing Products | Yurman's Copyrighted Designs |
|---|---|

**Reg. No. VAu 405-161**

**Reg. No. VA 1-876-304**

36.    As shown above, the Infringing Products are substantially similar to the Copyrighted Designs.

37.    Upon information and belief, Defendants intentionally manufactured, caused to be manufactured, displayed, advertised, distributed, offered for sale, and/or sold the Infringing Products because they look virtually indistinguishable from DAVID YURMAN brand jewelry pieces. Indeed, numerous consumers have not only identified the Infringing Products as imitations of Yurman's jewelry products, but have celebrated these cheap knock-offs as "David Yurman" finds, as shown by way of the examples below, and the additional examples included at Exhibit B.







**kaysie_webb**
Kaysie Webber · 6-2

**Follow**

My TJ Maxx look-a-like super find today!! #davidyurman #cablebracelet #tjmaxx #lookalike 😍 😍 😍 @TJ Maxx



24 saved                                                     271     9

Love a good dupe!! Perfect addition to my bracelet stack!

#tjmaxx  #tjmaxxfinds  #tjmaxxshopping  #tjmaxxhaul  #tjmaxxfind  #tjmaxxs
hopwithme



38.    Upon information and belief, prior to manufacturing, causing to be manufactured, displaying, advertising, distributing, offering for sale, and/or selling the Infringing Products, Defendants had access to Yurman's Copyrighted Designs, including because Yurman's Copyrighted Designs have been advertised, promoted, and sold widely throughout the United States for years before Defendants engaged in these unlawful activities.

39.     Upon information and belief, prior to Defendants' manufacturing, causing to be manufactured, displaying, advertising, distributing, offering for sale, and/or selling the Infringing Products, Defendants were aware of the DAVID YURMAN brand and of the commercial success and consumer appeal of Yurman's Copyrighted Designs.

40.     Upon information and belief, Defendants have manufactured, caused to be manufactured, displayed, advertised, distributed, offered for sale, and/or sold the Infringing Products with knowledge that such products are copies of Yurman's Copyrighted Designs.

41.     On August 18, 2025, Yurman sent Defendant TJX a letter identifying numerous of the Infringing Products, and explaining that its sale of these Infringing Products violated Yurman's rights and demanding that such conduct immediately cease. The parties engaged in subsequent correspondence but, upon information and belief, Defendant TJX has continued to offer the Infringing Products for sale.

42.     Defendants have not sought or received authorization from Yurman for any purpose whatsoever, including for their imitation and reproduction of Yurman's Copyrighted Designs.

43.     Defendants' distribution and sale of the Infringing Products unlawfully wrests from Yurman control over its reputation and, on information and belief, is unjustly enriching Defendants.

44.     Defendants' unauthorized acts as described herein have caused and will continue to cause irreparable damage to Yurman and its business unless restrained by this Court.

## FIRST CLAIM FOR RELIEF:

### Copyright Infringement in Violation of 17 U.S.C. § 501

45.     Yurman repeats and incorporates by reference the foregoing allegations as if fully set forth herein.

46.     The Copyrighted Designs are original works of authorship, embodying subject matter protected by copyright.

47.     Yurman is, and has been at all relevant times, the sole and exclusive owner of all right, title, and interest in and to the Copyrighted Designs.

48.     Yurman has obtained from the United States Copyright Office registrations for the Copyrighted Designs, attached hereto at Exhibit C.

49.     The Copyrighted Designs were federally registered prior to Defendants' copying.

50.     Defendants had access to the Copyrighted Designs because Yurman has widely advertised these designs, has offered jewelry products bearing these designs for sale to the public through numerous trade channels, including through Yurman's website and boutiques, third-party brick-and-mortar stores and online retailers, and Yurman products bearing the Copyrighted Designs have been featured in the media, including wide-circulation magazines and social media.

51.     After the Copyrighted Designs were published and Defendants had access to these designs, Defendants infringed Yurman's copyright in these designs by manufacturing, importing, exporting, displaying, advertising, reproducing, distributing, offering for sale, and/or selling the Infringing Products, which are substantially similar in overall appearance to the Copyrighted Designs.

52.     Defendants have thereby violated Yurman's exclusive right in its Copyrighted Designs under Section 106 of the Copyright Act, 17 U.S.C. § 106, in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

53.     Upon information and belief, Defendants acted willfully and in bad faith in unlawfully manufacturing, importing, exporting, displaying, advertising, reproducing, distributing, offering for sale, and/or selling the Infringing Products.

54.     Defendants' infringement of Yurman's exclusive rights in the Copyrighted Designs has caused Yurman damage, and has enabled Defendants to profit illegally therefrom. Accordingly, Yurman is entitled to damages in an amount to be proven at trial, Defendants' profits attributable to the infringement pursuant to 17 U.S.C. § 504, and costs and fees pursuant to 17 U.S.C. § 505.

55.     Defendants' copyright infringement has caused, and unless enjoined by this Court, will continue to cause, Yurman to sustain irreparable damage, loss, and injury, for which Yurman has no adequate remedy at law. Thus, Yurman is entitled to an injunction against Defendants' continuing infringement of the Copyrighted Designs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Yurman prays for judgment against Defendants as follows:

1.     That a permanent injunction be issued enjoining Defendants, and any of Defendants' officers, agents, privies, shareholders, principals, directors, licensees, attorneys, servants, employees, affiliates, subsidiaries, successors and assigns, and all those persons acting in concert or participation with any of them, and any entity owned or controlled in whole or in part by Defendants, from:

a. Infringing the Copyrighted Designs, including without limitation, by manufacturing, reproducing, distributing, displaying, advertising, promoting, offering for sale, selling, importing, and/or exporting the Infringing Products or any other products that imitate the Copyrighted Designs or any other designs copied or derived from or substantially similar to the Copyrighted Designs; and

b. Assisting or authorizing any third party to engage in any of the actions prohibited by subparagraph (a) above.

2. Directing that Defendants turn over to Yurman for impoundment and eventual destruction, without compensation to Defendants, all products or materials in Defendants' possession or control that violate the provisions of paragraph 1(a) above, along with all articles by means of which such unauthorized copies may be reproduced.

3. Directing that Defendants, at their own expense, recall from any distributors, retailers, vendors, or others to whom they have distributed products or materials that violate the provisions of paragraph 1(a) above, and that Defendants deliver up to Yurman for destruction all products or materials returned to Defendants.

4. Directing that Defendants, at their own expense, contact each manufacturer, distributor and/or supplier of any products or materials supplied to Defendants that violate the provisions of paragraph 1(a) above, and obtain written confirmation that any and all such products or materials have been destroyed, or returned to Defendants. For any such products or materials returned to Defendants, Defendants shall immediately deliver those up to Plaintiffs for destruction.

5.      Directing that Defendants provide to Yurman the identities of and contact information for each manufacturer, distributor and/or supplier of any products or materials supplied to Defendants that violate the provisions of paragraph 1(a) above.

6.      Granting Yurman monetary relief, including actual damages and Defendants' profits, as provided by 17 U.S.C. § 504(b), or statutory damages as Yurman may elect as provided by 17 U.S.C. § 504(c).

7.      Awarding Yurman full costs, fees, and expenses incurred by reason of Defendants' unlawful acts, including, as part of Yurman's costs, reasonable attorneys' fees pursuant to 17 U.S.C. § 505.

8.      Awarding Yurman punitive damages.

9.      Awarding Yurman both pre-judgment and post-judgment interest on each and every monetary award.

10.      Granting Yurman such other and further relief as the Court may consider equitable, just and proper.

## JURY DEMAND

11.      Yurman respectfully requests a trial by jury as to all issues so triable.

Dated: February 11, 2026                    Respectfully submitted,

                                    By:  /s/ *John Margiotta*
                                    John P. Margiotta

                                    Shelby P. Rokito
                                    FROSS ZELNICK LEHRMAN & ZISSU, P.C.
                                    151 West 42nd Street, 17th Floor
                                    New York, New York 10036
                                    Tel: (212) 813-5900
                                    jmargiotta@fzlz.com
                                    srokito@fzlz.com

                                    *Attorneys for Plaintiffs*

24